# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF MICHIGAN
# SOUTHERN DIVISION

ANDRE ALLEN,

    Plaintiff,                      CIVIL ACTION NO. 15-cv-12340

    v.                                DISTRICT JUDGE MARIANNE O. BATTANI

VETBUILT SERVICES, INC.,          MAGISTRATE JUDGE MONA K. MAJZOUB

    Defendant.

_____/

## REPORT AND RECOMMENDATION

Plaintiff Andre Allen initiated this employment civil rights action against Defendant Vetbuilt Services, Inc. on June 30, 2015, asserting claims of sexual harassment and retaliation in violation of Title VII of the Civil Rights Act of 1964 (Title VII), 42 U.S.C. § 2000e, *et seq.*, and Michigan's Elliott-Larsen Civil Rights Act (ELCRA), Mich. Comp. Laws § 37.2101, *et seq.* (Docket no. 1.) Before the Court is Defendant's Motion for Summary Judgment. (Docket no. 41.) Plaintiff filed a Response to Defendant's Motion (docket no. 45), and Defendant replied to Plaintiff's Response (docket no. 46). This action has been referred to the undersigned for all pretrial proceedings. (Docket no. 11.) The undersigned has reviewed the pleadings, dispenses with a hearing pursuant to Eastern District of Michigan Local Rule 7.1(f)(2), and issues this Report and Recommendation pursuant to 28 U.S.C. § 636(b)(1)(B).

I.    **RECOMMENDATION**

For the reasons that follow, it is recommended that Defendant's Motion for Summary Judgment (docket no. 41) be **GRANTED IN PART** and **DENIED IN PART** as follows: (1) Defendant's Motion should be **GRANTED** with regard to Plaintiff's Title VII and ELCRA

retaliation claims; and (2) Defendant's Motion should be **DENIED** with regard to Plaintiff's Title VII and ELCRA sexual harassment claims.

## II.     REPORT

### A.     Background

Defendant Vetbuilt Services, Inc. is a staffing agency that hired Plaintiff Andre Allen, an African-American male, on March 28, 2013, as a temporary employee. (Docket no. 1 ¶ 7; docket no. 41 at 10; docket no. 41-1 at 3, 4; docket no. 45 at 7.) That same day, Defendant assigned Plaintiff to work for its third-party customer, Detroit Manufacturing Systems, Inc. (DMS), as a general laborer and a forklift operator. (Docket no. 41 at 11; docket no. 41-1 at 4; docket no. 45 at 7.)

In the Complaint, Plaintiff alleges that while he was working at DMS, "Defendant allowed Plaintiff to be subjected to unwanted sexual harassment, including, but not limited to, unwelcome comments and conduct of an offensive and sexual nature directed at Plaintiff, which thus created a hostile work environment." (Docket no. 1 ¶ 9.) According to Plaintiff, the harassment was frequent, and it continued even after he made complaints to his supervisor and human resources, as no action was taken in response to his complaints. (*Id*. ¶ 10.) Specifically, Plaintiff alleges that on or about June of 2013, he "issued written notice to human resources of a certain co-worker who was sexually harassing him."[1] (*Id*. ¶ 12.) Plaintiff alleges that he was subsequently humiliated and ordered to do some of his co-worker's work in retaliation for filing that complaint. (*Id*. ¶ 13.) Plaintiff further alleges that he was constructively discharged on or about August 18, 2013, because he could no longer continue to work in the hostile work environment. (*Id*. ¶ 14.) Plaintiff contends that he has suffered economic and emotional

---

[1] Plaintiff indicates that he attached this notice to his Complaint as Exhibit A (docket no. 1 ¶ 12); however, there is no such exhibit or document attached.

damages as a direct and proximate result of Defendant's unlawful and wrongful acts and omissions. (*Id*. ¶¶ 23, 27, 34, 38.)

The parties' briefs describe the alleged facts of this matter in greater detail, as gleaned from the parties' depositions and other discovery. (Docket nos. 41, 45.) According to Plaintiff, while he was working at DMS, his co-worker, Lanard Johnson, told Plaintiff that one of their fellow co-workers, Glynes Martin, asked Mr. Johnson to tell Plaintiff that she had a crush on Plaintiff. (Docket no. 45 at 7.) Plaintiff testified at his deposition that he told Mr. Johnson that he had "no time to entertain all this, and [he] kept going on about [his] job." *Id*. Shortly thereafter, Ms. Martin allegedly invited Plaintiff over to her house for dinner, asked him out on a date, and kept coming over into his work area. (*Id*. at 7-8.) She also allegedly cooked dinner and brought it to him at work one night, and when he didn't want to eat it, she "cussed him out." (*Id*. at 8, 10.) Plaintiff testified that there were numerous other occasions on which Ms. Martin would cuss him out and/or call him profane names, for instance, when he declined her invitation to go to the movies. (*Id*. at 9.) Plaintiff testified that other people witnessed Ms. Martin yelling at him after he wouldn't eat the dinner she had brought for him, like his co-worker, Debra, and a security guard, who went and got Plaintiff and Ms. Martin's onsite DMS supervisor, Anthony Washington, and brought him over to where the alleged incident was taking place. (*Id*. at 9-10; docket no. 41 at 11-12.) Additionally, Mr. Johnson testified at his deposition that he had witnessed Plaintiff and Ms. Martin bickering. (*Id*. at 11.)

Plaintiff testified that sometime after he had rejected Ms. Martin's invitations and romantic gestures, Ms. Martin approached him and asked if he was going to clean up her dunnage area, and he told her no. (Docket no. 41-1 at 146.) According to Plaintiff, Ms. Martin then called someone on her cell phone, and while she was on the phone, Mr. Washington

3

contacted Plaintiff via a two-way radio and instructed him to clean up Ms. Martin's dunnage area. (*Id*.) Plaintiff agreed to follow Mr. Washington's order and Ms. Martin then approached Plaintiff again and allegedly said, "I can have you do anything in here I want you to do; I can get you hired in here, and I can get you fired out of here." (*Id*.) According to Plaintiff, Mr. Washington ordered him to do Ms. Martin's work numerous times, and the majority of the time, she would be standing there watching. (*Id*. at 147-48.) When asked to clarify the term "numerous," Plaintiff stated that it was probably more than five or six times. (*Id*.) It is Plaintiff's belief that Ms. Martin had Mr. Washington order Plaintiff to do her work because he rejected her romantic advances. (*Id*. at 148.)

Plaintiff testified that when he complained to Mr. Washington about having to do Ms. Martin's work, Mr. Washington said, "why don't you just go on ahead and hit her," suggesting that Plaintiff should just have sex with Ms. Martin. (Docket no. 45 at 11-12 (citing docket no. 41-1 at 147, 162).) Plaintiff asserts that he also verbally complained about the situation to Jacqueline Rivera, his immediate supervisor and an account manager with Defendant Vetbuilt Services, and he asked her to move him to a different shift. (*Id*. at 12-13.) He admitted, however, that he did not explicitly tell Ms. Rivera that Ms. Martin was sexually harassing him. (Docket no. 41-1 at 146.) According to Plaintiff, Ms. Rivera told him that she would look into it, but she never took any action. (Docket no. 45 at 12, 13.) Plaintiff claims that he also filed a written complaint with Defendant, dated June 5, 2013, in accordance with company policy. (*Id*. at 13; docket no. 45-5.) Conversely, Hector Malacara, Defendant's sole shareholder, officer, director, and Director of Human Resources, attests that Plaintiff did not complain to him or to Defendant's Human Resources Department, and that Defendant did not receive Plaintiff's

written complaint while Plaintiff was still employed by Defendant. (Docket no. 41 at 18-19; docket no. 41-1 at 3.)

Plaintiff also allegedly told Mr. Washington that they needed to have a meeting with Ms. Rivera regarding the situation. (Docket no. 41-1 at 148.) On the day the meeting was supposed to take place, Plaintiff came to work, and Mr. Washington told Plaintiff that Tania Trevino, another representative of Defendant, was supposed to attend the meeting in Ms. Rivera's place and didn't show up. (*Id*. at 148-49.) The meeting was never held. (*Id*. at 149.) Plaintiff allegedly called Ms. Trevino sometime that day to further complain about the situation, and she told Plaintiff that she was going to get in touch with Ms. Rivera. (*Id*. at 149-50.) Plaintiff, however, worked his last shift with DMS that day and voluntarily terminated his employment with Defendant on August 15, 2013, because he believed that he had no other alternative. (*Id*. at 149; docket no. 41 at 19; docket no. 45 at 13.) Defendant's records reflect that Plaintiff elected to quit because he did not want to work in the supermarket area at DMS and wanted to be reassigned as a forklift driver. (Docket no. 41 at 19.)

According to Mr. Malacara, Mr. Washington has purportedly stated that he is unaware of any alleged incidents of a female DMS employee sexually harassing Plaintiff. (Docket no. 41 at 13.) And Ms. Martin, at her deposition, denied that she told anyone that she had a crush on Plaintiff or that she asked Plaintiff out on a date. (*Id*. at 14.) She claims that she never sexually harassed Plaintiff and that she never retaliated against him or cussed at him for refusing any advances. (*Id*. at 14, 16.) She also denies that she ever influenced Mr. Washington into assigning Plaintiff her work. (*Id*. at 16.) In fact, Ms. Martin testified that she does not even know who Plaintiff is. (Docket no. 45 at 7 n.1.)

Ms. Rivera and Ms. Trevino submitted sworn statements under the penalty of perjury to the Equal Employment Opportunity Commission (EEOC) in conjunction with its investigation into this matter. (Docket no. 41 at 16 n.4; docket no. 41-1 at 65, 67.) Ms. Rivera, in her affidavit, stated that while she was on vacation, on August 9, 2013, she received a call from Ms. Trevino who informed her that Plaintiff was very upset and wanted to quit because he did not want to work in the supermarket area of DMS. (Docket no. 41-1 at 65.) She says that Plaintiff never mentioned anything about sexual harassment to her. (*Id.*) Ms. Trevino attests that she received a call from Plaintiff on Friday, August 9, 2013, during which he expressed that he was upset because Mr. Washington was making him work in the supermarket area at DMS instead of as a forklift driver. (*Id.* at 67.) According to Ms. Trevino, Plaintiff said that he no longer wanted to work at DMS because working in the supermarket area was too much work to do by himself. (*Id.*) Ms. Trevino purportedly told Plaintiff that she would look into it and called Mr. Washington immediately thereafter, but she did not get a response. (*Id.*) She affirms that she went to DMS the following Monday and spoke with Mr. Washington regarding the situation; he replied that it wouldn't be a problem for Plaintiff to return to work as a forklift driver. (*Id.*) Mr. Washington then allegedly called Plaintiff in Ms. Trevino's presence, apologized to Plaintiff for making him feel overwhelmed with work and asked him to continue working with DMS as a forklift driver. (*Id.*) Ms. Trevino claims that there was never any mention of sexual harassment or a hostile work environment. (*Id.*)

**B.     Governing Law**

Defendant moves for summary judgment pursuant to Federal Rule of Civil Procedure 56. (Docket no. 41.) Summary judgment is appropriate where the moving party shows that there is "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of

law." Fed. R. Civ. P. 56(a). The moving party has the burden of showing an absence of evidence to support the non-moving party's case. *Covington v. Knox Cnty. Sch. Sys.*, 205 F.3d 912, 915 (6th Cir. 2000). Rule 56 expressly provides that:

> A party asserting that a fact cannot be or is genuinely disputed must support the assertion by:
>
> (A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or
>
> (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.

Fed. R. Civ. P. 56(c)(1). "The court need consider only the cited materials, but it may consider other materials in the record." Fed. R. Civ. P. 56(c)(3).

Once the moving party has met its burden of production, the non-moving party must come forward with significant probative evidence showing that a genuine issue exists for trial. *Covington*, 205 F.3d at 915. A mere scintilla of evidence is insufficient to defeat a properly supported motion for summary judgment; rather, "there must be evidence on which the jury could reasonably find for the [non-moving party]." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986). Ultimately, a district court must determine whether the record as a whole presents a genuine issue of material fact, drawing "all justifiable inferences in the light most favorable to the non-moving party." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)*; Hager v. Pike County Bd. Of Educ.*, 286 F.3d 366, 370 (6th Cir. 2002).

### C. Analysis

#### 1. Sexual Harassment – Hostile Work Environment[2]

Title VII of the Civil Rights Act of 1964 provides that it is unlawful for an employer to "discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2.[3] "Plaintiffs alleging sex discrimination, including for sexual harassment, may recover on a theory of a hostile work environment." *Smith v. Rock-Tenn Servs., Inc.*, 813 F.3d 298, 307 (6th Cir. 2016) (citing *Meritor Sav. Bank, FSB v. Vinson,* 477 U.S. 57, 73 (1986)). To establish a prima facie case of a hostile work environment based on sexual harassment under Title VII, a plaintiff must show that (1) he or she is a member of a protected class; (2) he or she was subjected to unwelcome sexual harassment; (3) the harassment was based on sex; (4) the harassment created a hostile work environment; and (5) the employer is liable. *Randolph v. Ohio Dep't of Youth Servs.,* 453 F.3d 724, 733 (6th Cir. 2006). The parties do not dispute that Plaintiff can prove the first three elements of the prima facie case; the elements in dispute here are whether the sexual harassment created a hostile work environment, and whether Defendant can be held liable for the harassment.

---

[2] In his response to Defendant's Motion, in addition to arguing that he was subjected to a hostile work environment, Plaintiff argues that he was also subjected to *quid pro quo* sexual harassment. (Docket no. 45.) *Quid pro quo* sexual harassment occurs "when an employee's submission to unwanted sexual advances becomes either a condition for the receipt of job benefits, or the means to avoid an adverse employment action." *Howington v. Quality Rest. Concepts, LLC*, 298 F. App'x 436, 440 (6th Cir. 2008). Indeed, some of the facts developed through Plaintiff's deposition testimony could support a claim for *quid pro quo* sexual harassment. Presumably, these facts were known to Plaintiff before he filed the Complaint, but the substance of the Complaint focuses only on the creation of a hostile work environment. (*See* docket no. 1.) While the label affixed to Plaintiff's claims is not dispositive, neither the factual allegations nor the claims stated in the Complaint allude to *quid pro quo* sexual harassment; therefore, Plaintiff's sexual harassment claims are properly analyzed under the hostile work environment framework only. (*See* docket no. 1; *Stevens v. Saint Elizabeth Med. Ctr., Inc.*, 533 F. App'x 624, 628-29 (6th Cir. 2013).) Moreover, Plaintiff has not moved to amend the Complaint, and it is wholly improper to state a claim for the first time in a response to a motion for summary judgment. *See Tucker v. Union of Needletrades, Indus. & Textile Employees*, 407 F.3d 784, 788-89 (6th Cir. 2005). The undersigned will therefore disregard Plaintiff's argument regarding *quid pro quo* sexual harassment.

[3] Plaintiff's ELCRA claims are analyzed under the same evidentiary framework used in Title VII cases. *Galeski v. City of Dearborn*, 435 F. App'x 461, 466 n.4 (6th Cir. 2011) (citing *Humenny v. Genex Corp.*, 390 F.3d 901, 906 (6th Cir. 2004)).

A hostile work environment occurs "[w]hen the workplace is permeated with discriminatory intimidation, ridicule, and insult that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment." *Harris v. Forklift Sys., Inc.,* 510 U.S. 17, 21 (1993) (internal quotation marks and citation omitted). To succeed on a hostile work environment sexual harassment claim, "a plaintiff must show that the work environment was both subjectively and objectively hostile; in other words, that the plaintiff not only perceived the work environment as hostile, but that a reasonable person would have found it hostile or abusive as well." *Smith*, 813 F.3d at 309 (citing *Harris*, 510 U.S. at 21-22). The hostility of a work environment can be determined only by considering the totality of the circumstances, including "the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." *Harris,* 510 U.S. at 23. The Sixth Circuit considers "whether harassment was so severe and pervasive as to constitute a hostile work environment to be 'quintessentially a question of fact.'" *Smith*, 813 F.3d at 310 (quoting *Jordan v. City of Cleveland,* 464 F.3d 584, 597 (6th Cir. 2006)).

It is undisputed that Plaintiff subjectively found his work environment to be severely hostile. Defendant, however, argues that Ms. Martin's alleged romantic gestures, i.e., inviting Plaintiff to her house for dinner, inviting him to the movies, and bringing him dinner, cannot reasonably be considered to be so objectively severe or pervasive to constitute a hostile working environment. (Docket no. 41 at 22-26.) To support this argument, Defendant relies on a decision from this District, *Galeski v. City of Dearborn*, 690 F. Supp. 2d 603 (E.D. Mich. 2010), *aff'd*, 435 F. App'x 461 (6th Cir. 2011), in which the court held that twenty-three separate incidents of alleged sexual harassment perpetrated upon a male employee by his male

supervisor, such as complimenting the employee's eyes and hair, telling the employee about his pornography collection, telling the employee a story about being sexually aroused when he was robbed, offering employee rides home from work, bringing employee food items, and driving past employee's house, occurring over an eighteen-month period, were insufficient to create a hostile work environment. *Id.* at 618. Defendant also relies upon *Moore v. Third Judicial Circuit of Mich.*, 867 F. Supp. 2d 872, 883 (E.D. Mich. 2011) (male supervisor's "romantic overtures [toward female employee] in the form of unwanted affection, attention, compliments, and fruitless attempts to spend non-business time with her" not severe enough to constitute a hostile work environment under Sixth Circuit precedent (collecting cases)) and *Bowman v. Shawnee State Univ.*, 220 F. 3d 456, 459, 464 (6th Cir. 2000) (female supervisor's rubbing of male employee's shoulders; grabbing of his buttocks combined with a comment that she "controlled [his] ass and she would do whatever she wanted with it;" invitation to try her whirlpool out together; suggestion that the next time he comes to her house to go swimming, it be without his girlfriend; and placement of her hands on his chest and pushing him while in her office not sufficiently severe or pervasive to constitute a hostile work environment).

Having reviewed this and other similar precedent, the undersigned agrees with Defendant that Ms. Martin's romantic gestures of inviting Plaintiff to her house and to the movies and bringing him food at work, without more, are not severe or pervasive enough to create a hostile work environment. But those gestures do not comprise the totality of the circumstances of this matter. The Sixth Circuit has held that "non-sexual behavior may comprise part of a sexual harassment claim when that behavior 'could well be viewed as work-sabotaging behavior that creates a hostile work environment,'" and it therefore "may be considered in determining whether Plaintiff experienced a hostile working environment." *Howington v. Quality Rest.*

*Concepts, LLC*, 298 F. App'x 436, 444 n.8 (6th Cir. 2008) (quoting *Williams v. Gen. Motors Corp.*, 187 F.3d 553, 564 (6th Cir. 1999)). Here, Plaintiff alleges that when he rejected Ms. Martin's invitations and food, she yelled and cussed at him and called him profane names, sometimes in front of others, and she also verbally threatened him by stating, "I can have you do anything in here I want you to do; I can get you hired in here, and I can get you fired out of here." Furthermore, Plaintiff makes allegations that distinguish the circumstances of this matter from those in *Galeski*, in that he alleges that Ms. Martin's conduct interfered with his work and altered the terms and conditions of his employment. *See Galeski* 435 F. App'x at 468. Specifically, Plaintiff alleges that because he rejected Ms. Martin's romantic gestures, she influenced their supervisor, Mr. Washington, to order Plaintiff to do additional work – her work – on numerous occasions. On this record, the Court concludes that a reasonable jury, viewing the evidence objectively, could perceive Plaintiff's work environment as hostile.

If a hostile work environment is established, "[f]or an employer to be liable for the sexual harassment of an employee by a coworker, the harassed employee must show that the employer both (1) knew or should have known of the harassment and (2) failed to take prompt and appropriate corrective action." *E.E.O.C. v. Harbert-Yeargin, Inc.*, 266 F.3d 498, 518 (6th Cir. 2001). Defendant argues that it is not liable to Plaintiff for Ms. Martin's alleged harassment because it did not know and had no reason to know about it. (Docket no. 41 at 26-30.) Defendant first argues in this regard that Plaintiff failed to properly report the sexual harassment in accordance with company policy, a policy that Plaintiff admittedly received upon hire. (*Id*. at 28.) But the Sixth Circuit has held that while a plaintiff's failure to file a formal complaint in accordance with procedure may be considered in determining whether an employer knew about the claimed harassment, that failure does not absolutely bar a plaintiff's claim where the record

reflects that the employer was clearly apprised of the harassment. *Randolph*, 453 F.3d at 735 (citing *Jackson v. Quanex Corp.*, 191 F.3d 647, 663 (6th Cir. 1999)). Furthermore, the policy states that an individual who believes that he has been subjected to sexual harassment "should report the incident to the employee's VETBUILT Building Group Supervisor, manager, or human resources representative." (Docket no. 41-1 at 12.) Defendant argues that Plaintiff has produced no evidence that he notified a supervisor, manager, or the Human Resources Department about the alleged sexual harassment before he quit. (Docket no. 41 at 28.) To the contrary, Plaintiff has testified under oath that he notified Ms. Rivera, who was his immediate point of contact and supervisor at Vetbuilt, about the harassment. (Docket no. 45 at 12-13.) Thus, there is a question of fact as to whether Plaintiff actually violated Defendant's sexual harassment reporting policy.

Defendant also rebukes Plaintiff's allegations with self-serving sworn statements and affidavits from Ms. Rivera, Ms. Trevino, and Mr. Malacara, in which they deny that Plaintiff ever mentioned sexual harassment, a hostile work environment, or retaliation to them. (Docket no. 41-1 at 3, 65, 67.) Plaintiff, however, testified that he made both verbal and written complaints to Defendant and its employees, Ms. Rivera and Ms. Trevino. For example, Plaintiff testified that he verbally complained to Ms. Rivera about the sexual harassment (although he admittedly did not use those exact words), and he asked her to move him to a different shift and do whatever she could to get him away from Ms. Martin. (*Id.* at 146, 151, 154.) Plaintiff also testified that he called Ms. Trevino sometime before his last shift to complain about the situation. (*Id.* at 149-50.) While, as further discussed below, Plaintiff's June 5, 2013 written complaint was insufficient to put Defendant on notice of Ms. Martin's alleged sexual harassment, and while Plaintiff's deposition testimony is not necessarily a model of clarity, it is sufficient to raise a

12

genuine issue of material fact regarding whether Defendant knew about the sexual harassment. Furthermore, there is no evidence in the record to show that Defendant took prompt and appropriate action to correct the situation.

A review of the record in the light most favorable to Plaintiff establishes that there is a genuine issue of material fact with regard to whether Defendant knew or should have known that Ms. Martin was harassing Plaintiff and whether Ms. Martin's alleged conduct created a hostile work environment. Accordingly, Defendant's Motion for Summary Judgment should be denied with regard to Plaintiff's Title VII and ELCRA sexual harassment claims.

      *2.*    *Retaliation*

Plaintiff claims that he filed a written complaint of sexual harassment with Defendant's Human Resources Department sometime in June of 2013, and in retaliation for filing that complaint, he was subsequently humiliated and "made to do some of the work of his co-worker," presumably Ms. Martin. (Docket no. 1 ¶¶ 12, 13.) Title VII of the Civil Rights Act of 1964 prohibits retaliation against an employee who has opposed a violation of the Act.[4] 42 U.S.C. § 2000e-3(a). To establish a prima facie case of retaliation, the plaintiff must show that "(1) he or she engaged in protected activity, (2) the employer knew of the exercise of the protected right, (3) an adverse employment action was subsequently taken against the employee, and (4) there was a causal connection between the protected activity and the adverse employment action." *Hawkins v. Anheuser-Busch, Inc.*, 517 F.3d 321, 345 (6th Cir. 2008) (citing *Morris v. Oldham Cnty. Fiscal Court*, 201 F.3d 784, 792 (6th Cir. 2000)).

The reporting of sexual harassment constitutes a protected activity under Title VII. *See Montell v. Diversified Clinical Servs., Inc.*, 757 F.3d 497, 504-05 (6th Cir. 2014). As noted

---

[4] "Once again, the ELCRA analysis is identical to the Title VII analysis;" accordingly, the forthcoming Title VII retaliation analysis applies to Plaintiff's ELCRA retaliation claim. *Wasek v. Arrow Energy Servs., Inc.*, 682 F.3d 463, 472 (6th Cir. 2012).

above, Plaintiff indicates that he attached his written notice of sexual harassment to the Complaint as Exhibit A (docket no. 1 ¶ 12); however, there is no such exhibit or document attached. Nevertheless, the Court will consider the June 5, 2013, unaddressed letter that Plaintiff allegedly delivered to a receptionist at Defendant's offices (*see* docket no. 41-1 at 152), and which is attached as Exhibit D to Plaintiff's Response to Defendant's Motion for Summary Judgment, as the written complaint of sexual harassment to which Plaintiff refers. (Docket no. 45-5.) Having reviewed this document, the Court finds it does not constitute a report of sexual harassment under the law of this Circuit, and it is therefore not protected activity under Title VII. The portion of the letter regarding Ms. Martin is reproduced, verbatim, below:

> their is a lady by the name of Glynniss she work the Dunnage area I have been told by a co worker that she told him go tell Andre that I have a crush on him I told my co-worker man get out here I'm doing my job here in the supermarket I'm not paying her no mind and I'm starting to feel uncomfortable working around her, this woman is a plant trouble maker

(Docket no. 45-5 at 2 (errors in original).) It is well-settled that "a vague charge of discrimination in an internal letter or memorandum is insufficient to constitute opposition to an unlawful employment practice." *Balding-Margolis v. Cleveland Arcade*, 352 F. App'x 35, 45 (6th Cir. 2009) (quoting *Fox v. Eagle Distrib. Co.*, 510 F.3d 587, 591-92 (6th Cir. 2007) (quoting *Booker v. Brown & Williamson Tobacco Co.*, 879 F.2d 1304, 1313 (6th Cir. 1989))). Even drawing all reasonable inferences in favor of Plaintiff, there is simply no indication in this letter that Ms. Martin was sexually harassing Plaintiff.

Assuming, *arguendo*, that the June 5, 2013 letter does constitute protected activity, Plaintiff has not established that there was a causal connection between the protected activity and the adverse employment action. "Title VII and the ELCRA apply a but-for causation standard to retaliation claims: the employee must show that the allegedly adverse employment action

would not have occurred but for her complaint." *Marotta v. Ford Motor Co.*, 119 F. Supp. 3d 676, 695 (E.D. Mich. 2015) (citing *Univ. of Texas S.W. Medical Center v. Nassar,* ⸺ U.S. ⸺, 133 S.Ct. 2517, 186 L.Ed.2d 503 (2013); *Beard v. AAA of Mich.,* 593 F. App'x 447 (6th Cir. 2014); *Williams v. Serra Chevrolet Auto., LLC*, 4 F. Supp. 3d 865 (E.D. Mich. 2014)). Plaintiff alleges, in conclusory fashion, that after he filed the June 2013 written complaint, he was humiliated and ordered to do some of Ms. Martin's work. (Docket no. 1 ¶¶ 12, 13.) Plaintiff, however, does not explain who humiliated him or how he was humiliated. With regard to being ordered to do Ms. Martin's work, Plaintiff alleges that Mr. Washington ordered Plaintiff to clean up Ms. Martin's dunnage area numerous times. Nevertheless, Plaintiff does not allege, and there is no record evidence to show, that Mr. Washington (or Ms. Martin) knew or had reason to know about the June 2013 complaint that Plaintiff allegedly made to Defendant's Human Resources Department. There is also no record evidence that demonstrates that Mr. Washington ordered Plaintiff to do Ms. Martin's work because Plaintiff filed the complaint. In fact, Plaintiff's unsupported allegation that he was ordered to do Ms. Martin's work because he filed the complaint is directly contradicted by Plaintiff's own deposition testimony – that Ms. Martin had Mr. Washington order Plaintiff to do her work because he rejected her romantic advances. (*See* docket no. 41-1 at 148.) Plaintiff has failed to show that he would not have been ordered to do Ms. Martin's work had he not filed the June 2013 written complaint with Defendant's Human Resources Department. Accordingly, Plaintiff has not established a prima facie case of retaliation, and Defendant's Motion for Summary Judgment should be granted with regard to Plaintiff's Title VII and ELCRA claims of retaliation.

### D. Conclusion

For the above-stated reasons, the court should **GRANT IN PART** and **DENY IN PART** Defendant's Motion for Summary Judgment (docket no. 41) as follows: (1) the court should **GRANT** Defendant's Motion with regard to Plaintiff's Title VII and ELCRA retaliation claims; and (2) the court should **DENY** Defendant's Motion with regard to Plaintiff's Title VII and ELCRA sexual harassment claims.

### III. NOTICE TO PARTIES REGARDING OBJECTIONS

The parties to this action may object to and seek review of this Report and Recommendation, but are required to act within fourteen (14) days of service of a copy hereof as provided for in 28 U.S.C. § 636(b)(1) and Eastern District of Michigan Local Rule 72.1(d). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140, 149 (1985); *Howard v. Sec'y of Health & Human Servs.,* 932 F.2d 505 (6th Cir. 1991); *U.S. v. Walters*, 638 F.2d 947, 949-50 (6th Cir. 1981). Filing of objections which raise some issues but fail to raise others with specificity, will not preserve all the objections a party might have to this Report and Recommendation. *Willis v. Sec'y of Health & Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n Of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987). Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this Magistrate Judge.

Any objections must be labeled as "Objection #1," "Objection #2," etc. Any objection must recite *precisely* the provision of this Report and Recommendation to which it pertains. Not later than fourteen days after service of an objection, the opposing party must file a concise response proportionate to the objections in length and complexity. The response must

specifically address each issue raised in the objections, in the same order and labeled as "Response to Objection #1," "Response to Objection #2," etc.


Dated: August 11, 2017    s/ Mona K. Majzoub
MONA K. MAJZOUB
UNITED STATES MAGISTRATE JUDGE


**PROOF OF SERVICE**

I hereby certify that a copy of this Report and Recommendation was served upon counsel of record on this date.

Dated: August 11, 2017    s/ Lisa C. Bartlett
Case Manager